## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| Chavona M. Burton, | : | Case No. 3:19-cv-00313 |
| Plaintiff, | : | District Judge Michael J. Newman |
| vs. | : | Magistrate Judge Sharon L. Ovington |
| Commissioner of the Social Security Administration, | : | |
| Defendant. | : | |

# REPORT AND RECOMMENDATIONS[1]

## I. INTRODUCTION

In April 2015, Plaintiff Chavona M. Burton filed an application for Disability Insurance Benefits, Supplemental Security Income, and for a period of disability benefits. The claim was denied initially and upon reconsideration. After a hearing at Plaintiff's request, Administrative Law Judge Deborah F. Sanders concluded that Plaintiff was not eligible for benefits because she was not under a "disability" as defined in the Social Security Act. The Appeals Council denied Plaintiff's request for review.

Plaintiff subsequently filed this action. Plaintiff seeks a remand for benefits, or in the alternative, for further proceedings. The Commissioner asks the Court to affirm the non-disability decision.

This case is before the Court upon Plaintiff's Statement of Errors (Doc. No. 9), the

---

[1] Attached is a NOTICE to the parties regarding objections to this Report and Recommendations.

Commissioner's Memorandum in Opposition (Doc. No. 12), and the administrative record (Doc No. 7).

## II. BACKGROUND

Plaintiff asserts that she has been under a disability since April 9, 2015. At that time, Plaintiff was thirty-three years old. Accordingly, she was considered a "younger person" under Social Security Regulations. *See* § 404.1563(c); 20 C.F.R. § 416.963(c).[2] She has at least a high school education.

The evidence of the record is sufficiently summarized in the ALJ's decision (Doc. No. 6-2, PageID 48-63), Plaintiff's Statement of Errors (Doc. No. 9), and the Commissioner's Memorandum in Opposition (Doc. No. 12). Rather than repeat these summaries, the Court will focus on the pertinent evidence in the discussion below.

## III. STANDARD OF REVIEW

The Social Security Administration provides Disability Insurance Benefits and Supplemental Security Income to individuals who are under a "disability," among other eligibility requirements. *Bowen v. City of New York,* 476 U.S. 467, 470 (1986); *see* 42 U.S.C. §§ 423(a)(1), 1382(a). The term "disability"—as defined by the Social Security Act—has specialized meaning of limited scope. It encompasses "any medically determinable physical or mental impairment" that precludes an applicant from performing a significant paid job—i.e., "substantial gainful activity," in Social Security lexicon. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *see Bowen,* 476 U.S. at 469-70.

---

[2] The remaining citations will identify the pertinent Disability Insurance Benefits Regulations with full knowledge of the corresponding Supplemental Security Income Regulations.

Judicial review of an ALJ's non-disability decision proceeds along two lines: "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007). Review for substantial evidence is not driven by whether the Court agrees or disagrees with the factual findings or by whether the administrative record contains evidence contrary to those factual findings. *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). Instead, the factual findings are upheld if the substantial-evidence standard is met—that is, "if a 'reasonable mind might accept the relevant evidence as adequate to support a conclusion.'" *Blakely*, 581 F.3d at 407 (quoting *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance…" *Rogers*, 486 F.3d at 241 (citations and internal quotation marks omitted); *see Gentry*, 741 F.3d at 722.

The other line of judicial inquiry—reviewing the correctness of the legal criteria—may result in reversal even when the record contains substantial evidence supporting the factual findings. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009); *see Bowen*, 478 F.3d at 746. "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting in part *Bowen*, 478 F.3d at 746, and citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

3

## IV. THE ALJ'S DECISION

As noted previously, the Administrative Law Judge was tasked with evaluating the evidence connected to Plaintiff's application for benefits. In doing so, the Administrative Law Judge considered each of the five sequential steps set forth in the Social Security Regulations. *See* C.F.R. § 416.920. She reached the following main conclusions:

Step 1: Plaintiff did not engage in substantial gainful activity after the alleged onset date, April 9, 2015.

Step 2: She has the severe impairments of cervical radiculopathy, degenerative disc disease of the lumbar spine, migraine headaches, seizures, unspecified depressive disorder and unspecified anxiety disorder.

Step 3: She does not have an impairment or combination of impairments that meets or equals the severity of one in the Commissioner's List of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1.

Step 4: Her residual functional capacity, or the most she could do despite her impairments, *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002), consists of "sedentary work…subject to the following limitations: lifting/carrying no more than 10 pounds; standing and/or walking up to 6 hours in 8 hour day; sit up to 6 hours in an 8 hour day; occasional climbing of ramps and stairs; no climbing of ladders, ropes and scaffolds; occasional balancing, stooping, kneeling, crouching and crawling; frequent overhead reaching; no exposure unprotected heights and dangerous machinery, and no operation of motor vehicle; avoid all exposure to wetness, humidity, excessive noise and bright lights; carry out simple routine and repetitive tasks but not at a production rate pace, strict production quotas or fast paced work; occasional interaction with the public but not in a customer service capacity; adapt to consistent work environment with few changes in the routine or work environment; and individual may be off task 5-8% and absent 8-10 days a year."

Step 4: Plaintiff was unable to perform any past relevant work.

4

> Step 5: Plaintiff could perform a significant number of jobs that exist in the national economy.

(Doc. No. 6-2, PageID 51-63). These main findings led the Administrative Law Judge to conclude that Plaintiff was not under a benefits-qualifying disability. *Id.* at 63.

## V. DISCUSSION

Plaintiff's primary basis for the present action is that the ALJ's residual functional capacity assessment fails to properly account for Plaintiff's need for flexibility in her work schedule. (Doc. No. 9, PageID 2166). Plaintiff contends that the ALJ's failure to adequately account for this limitation and her failure to explain why the limitation was omitted are grounds for reversal. *Id.* at 2169-70.

To support her assertion that she needs a flexible work schedule, Plaintiff points to the opinions of state-agency psychologists, Dr. David Dietz and Dr. Tonnie Hoyle. Each psychologist reviewed Plaintiff's records and reached the identical conclusion that Plaintiff could "complete 3 to 4 step tasks in an environment where production standards and schedules are more flexible." (Doc. No. 6-2, PageID 589, 608). The ALJ placed great weight on the opinions of both psychologists by finding their opinions consistent with those of the consultative examiner, Dr. George Schulz. (Doc. No. 6-2, PageID 61).

In reliance on the opinions of Drs. Dietz and Hoyle, the ALJ assessed Plaintiff's mental residual functional capacity as follows:

> [C]arry out simple routine and repetitive tasks but not at a production rate pace, strict production quotas or fast paced work; occasional interaction with the public but not in a customer service capacity; adapt to consistent work environment with few changes in the routine or work environment; and individual may be off task 5-8% and absent 8-10 days a year.

5

(Doc. No. 6-2, PageID 54).

Plaintiff acknowledges that this aspect of the ALJ's assessment properly accounts for her pace and production limitations, as articulated by Dr. Dietz and Dr. Hoyle. She argues, however, that the ALJ failed to account for their opinions that she needed flexibility in her *work* schedule. (Doc. No. 9, PageID 2166).

In response, the Commissioner avers that Dr. Dietz and Dr. Hoyle did not think Plaintiff needed a flexible *work* schedule; they instead believed she needed a flexible *production* schedule. And, according to the Commissioner, the ALJ's RFC assessment reflects such a need. (Doc. No. 12, PageID 2184).

The Commissioner is correct on both points. Neither Dr. Dietz nor Dr. Hoyle used the term "work" in their opinion that Plaintiff needed a work "environment where production standards and schedules are more flexible." (Doc. No. 6-2, PageID 589, 608). Consequently, it is equally possible to read their opinion as meaning that Plaintiff needed flexibility in her "production standards and *production* schedule" or flexibility in her "production standards and *work* schedule." There was, however, no need for the ALJ to choose one interpretation over the other because both Dr. Dietz and Dr. Hoyle opined (on the same page of the forms they completed) that Plaintiff was "not significantly limited" in her "ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances." (Doc. No. 6-2, PageID 589, 608). Given that both Drs. Dietz and Hoyle thought Plaintiff was not significantly limited in these areas, the ALJ did not err by omitting the work-schedule limitation—i.e., that she needed a flexible work

6

schedule—from her residual functional capacity. *See Morris v. Comm'r of Soc. Sec.*, No. 2:16cv132, 2016 WL 6574158, at *6 (S.D. Ohio Nov. 7, 2016) (Kemp, MJ), Report & Recommendation adopted, 2017 WL 1287146, at *1 (April 4, 2017) (Watson, J) ("An ALJ has a 'zone of choice' when interpreting the record, and so long as the ALJ makes a choice which finds reasonable support in that record, that choice is insulated from judicial reversal."). And, because both Drs. Dietz and Hoyle thought that Plaintiff was not significantly limited in these abilities, the ALJ was not required to explain why she did not include in her assessment of Plaintiff's residual functional capacity the a flexible-work-schedule limitation.

Plaintiff also challenges the hypothetical questions the ALJ posed to the vocational expert. She contends that the ALJ incorrectly omitted from those questions her need for a flexible work schedule. This argument lacks merit for two reasons. First, as discussed above, the ALJ did not err by omitting from Plaintiff's residual functional capacity a limitation to work permitting a flexible work schedule. Second, the ALJ's hypotheticals question reflected the limitations set forth in her assessment of Plaintiff's residual functional capacity, which Plaintiff has not shown lacks substantial supporting evidence. *See Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 516 (6th Cir. 2010) ("In order for a vocational expert's testimony in response to a hypothetical question to serve as substantial evidence in support of the conclusion that a claimant can perform other work, the question must accurately portray a claimant's physical and mental impairments.")

Plaintiff lastly argues that the ALJ's inclusion in Plaintiff's residual functional capacity of a 5-8% off-task limitation is arbitrary. Plaintiff emphasizes that the ALJ did

7

not refer to the evidence, or otherwise explain how she determined, that Plaintiff had this off-task limitation. Plaintiff, however, has not pointed to evidence indicating that she needed a greater amount of off-task time. Without such evidence, there was no basis for the ALJ to find that Plaintiff need more than a 5-8% off-task limitation.

And although the ALJ did not specifically justify this time-off-task range, she did engage in a meaningful assessment of Plaintiff's impairments that may affect her ability to remain on task. As the ALJ reported, Plaintiff admitted "she performs household chores, prepares meals, goes grocery shopping, performs personal care, and drives a car," as well as that she "cares for her children, attends church, uses a computer and email, reads the newspaper, watches television, and listens to the radio." (Doc. No. 6-2, PageID 59). The performance of these activities on a regular and continuing basis, as the ALJ reasons, "indicates that [Plaintiff's] level of pain and mental impairment does not seriously interfere with her ability to maintain attention and concentration, perform routine tasks, understand and follow simple instructions, adapt or manage herself and interact with others." *Id.* at 60.

The ALJ also notes that while Plaintiff complained of concentration and memory problems, she denied having difficulty concentrating or memory difficulties on several occasions, and on May 12, 2015, she "indicated her conditions do not affect her ability to concentrate." *Id.* These findings align with the opinions of Dr. Dietz and Dr. Hoyle. Both psychologists found that Plaintiff was not significantly limited in her ability to maintain attention and concentration for extended periods. (Doc. No. 6-4, Page ID 589, 608).

Accordingly, Plaintiff's Statement of Errors is without merit.

8

## **IT IS THEREFORE RECOMMENDED THAT**:

1. The ALJ's non-disability decision be affirmed; and

2. The case be terminated on the Court's docket.

February 4, 2021                                  *s/Sharon L. Ovington*
                                                  Sharon L. Ovington
                                                  United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).